IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ARTHUR A. CARTER,                        :
                                         :
              Petitioner,                :
                                         :
       v.                                :        Civil Action No. 18-249-RGA
                                         :
ROBERT GILMORE, Warden, and              :
ATTORNEY GENERAL OF THE                  :
STATE OF DELAWARE,                       :
                                         :
              Respondents.               :
_____

## MEMORANDUM OPINION

Arthur A. Carter.  *Pro se* Petitioner.

Sean P. Lugg, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

March 17, 2021
Wilmington, Delaware

/s/ Richard G. Andrews
ANDREWS, UNITED STATES DISTRICT JUDGE:

Presently pending before the Court is Petitioner Arthur A. Carter's Application for a Writ

of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition").  (D.I. 1; D.I. 7)  The State filed an

Answer in opposition.  (D.I. 15)  For the reasons discussed, the Court will dismiss the Petition.

## I.   BACKGROUND

On June 22, 2013, [Petitioner] got into an argument with his pregnant girlfriend, Morlicea Capers, at her uncle's home in Edgemoor Gardens. Capers' uncle forcibly pushed [Petitioner] out of the residence. Once [Petitioner] was outside, he fired a gun into the air and then sped off in a silver car. Both Capers and a child inside the home telephoned 911 during the incident. Tapes of both phone calls were admitted into evidence. The State also admitted a redacted videotaped statement that [Petitioner] gave to police on June 27, 2013, the day he was arrested. In the tape, [Petitioner] initially says that someone fired a gun but that he did not know who. Later in the videotape, [Petitioner] admits that he fired a .45 caliber gun in the air before fleeing the scene.

Two neighborhood residents testified at trial that they heard gunshots on the evening of June 22, 2013.  One of those witnesses testified that she heard an argument just prior to the sound of a gunshot.  Neither neighbor could identify the shooter. One of the police officers who responded to the scene testified that he arrived within minutes after receiving a dispatch reporting a domestic dispute involving a gun.  The officer interviewed Capers who stated that she had had a physical altercation with [Petitioner], after which [Petitioner] left the residence and then returned with a handgun and fired a shot in the air outside the residence before he fled the scene in a silver car.

*Carter v. State*, 105 A.3d 988 (Table), 2014 WL 7010032, at *1-2 (Del. Nov. 12, 2014).  In

January 2014, a Delaware Superior Court jury convicted Petitioner of aggravated menacing,

possession of a firearm during the commission of a felony ("PFDCF"), and possession of a

firearm by a person prohibited ("PFBPP").  *See id.* at *1.  On April 11, 2014, the Superior Court

sentenced Petitioner as a habitual offender to a total period of thirty-five years at Level V

incarceration, to be suspended after serving thirty years for a period of probation. *Id*. The
Delaware Supreme Court affirmed Petitioner's convictions. *See id*. at *3.

In January 2015, Petitioner filed a *pro se* motion for post-conviction relief pursuant to
Delaware Superior Court Criminal Rule 61. (D.I. 16-7 at 206-210) The Superior Court
appointed counsel to represent Petitioner, and post-conviction counsel filed an amended Rule 61
motion ("Rule 61 motion"). (D.I. 2 at 23; D.I. 16-7 at 214 -257) The Superior Court denied the
amended Rule 61 motion in January 2017. *See State v. Carter*, 2017 WL 237621 (Del. Super.
Ct. Jan. 18, 2017). The Delaware Supreme Court affirmed that decision on November 15, 2017.
*See Carter v. State*, 175 A.3d 620 (Table), 2017 WL 5499162 (Del. Nov. 15, 2017).

## II.    GOVERNING LEGAL PRINCIPLES

### A.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the
petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b);
*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275
(1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts
> of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to
>    protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). A federal legal claim is "fairly presented" to state courts when there is: "(1) reliance on pertinent federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; [or] (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is

3

exhausted but procedurally defaulted. *See id.* at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### B.  Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal

court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).

Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's

decision was "contrary to, or involved an unreasonable application of, clearly established federal

law, as determined by the Supreme Court of the United States," or the state court's decision was

an unreasonable determination of the facts based on the evidence adduced in the trial.  28 U.S.C.

§ 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001).  A claim has been "adjudicated on the merits" for the purposes of

28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its

substance, "rather than on a procedural, or other, ground." *Thomas v. Horn*, 570 F.3d 105, 115

(3d Cir. 2009).  The deferential standard of § 2254(d) applies even "when a state court's order is

unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v.*

*Richter*, 562 U.S. 86, 98 (2011).  As explained by the Supreme Court, "it may be presumed that

the state court adjudicated the claim on the merits in the absence of any indication or state-law

procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state

court's determinations of factual issues are correct.  *See* 28 U.S.C. § 2254(e)(1).  This

presumption of correctness applies to both explicit and implicit findings of fact, and it is only

rebutted by clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1);

*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341

(2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to "factual issues," whereas the unreasonable application standard of § 2254(d)(2) applies to "decisions").

## III.   DISCUSSION

Petitioner's timely § 2254 Petition and Memorandum in Support (D.I. 1; D.I. 7-1) assert the following seven Claims for relief: (1) Petitioner was denied due process because defense counsel did not seek to sever the PFBPP charge (D.I. 1 at 5); (2) the evidence was insufficient to support Petitioner's PFDCF conviction because there was no physical evidence that he possessed a firearm (D.I. 1 at 7; D.I. 7-1 at 20); (3) the State committed a *Brady* violation by failing to disclose witness Capers' recantation (D.I. 1 at 7; D.I. 7-1 at 15, 24-27); (4) Petitioner was not afforded his Sixth Amendment right to confront accusers because his conviction rested on the recorded 911 calls which constituted inadmissible hearsay (D.I. 7-1 at 17, 21-22); (5) his confession was involuntary because he was intoxicated at the time and his will was overborne by investigators (D.I. 7-1 at 17-18); (6) Officer Tate presented false testimony about Capers' description of the incident  (D.I. 7-1 at 18-20); and (7) all prior counsel provided ineffective assistance (D.I. 7-1 at 32-37).  As noted by the State, Claim One actually asserts that defense counsel provided ineffective assistance by failing to move to sever Petitioner's person prohibited charge, with the resulting prejudice being that the State unduly focused on that charge during Petitioner's trial.  For ease of analysis, the Court will address Claim One when it addresses the other allegations of ineffective assistance asserted in Claim Seven, now identified as Claim Seven (e).

### A.   Claim Two:  Insufficient Evidence

In Claim Two, Petitioner contends that there was insufficient evidence to support his

PFDCF conviction because there was insufficient evidence to support "the conclusion that [he]

possessed a firearm."  (D.I. 1 at 7)  Petitioner's Memorandum asserts: "Ms. Caper or the juvenile

caller were not absolutely sure, if it was a gun shot that was actually fired (ear-witnesses),

because neither of the two [witnesses] actual [saw] any fire exit a barrel of a gun."  (D.I. 7-1 at

20)

On direct appeal, Petitioner argued that "the evidence was insufficient to support his

conviction for PFDCF because the State did not recover a gun or any physical evidence that

proved he possessed a firearm."  *Carter*, 2014 WL 7010032, at *2.  The Delaware Supreme

Court denied the argument as meritless.  Therefore, Claim Two will only warrant habeas relief if

the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of,

clearly established federal law.

The United States Supreme Court precedent governing insufficient evidence claims is

*Jackson v. Virginia*, 443 U.S. 307 (1979).  Pursuant to *Jackson*, "the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

at 319.  This standard "must be applied with explicit reference to the substantive elements of the

criminal offense as defined by state law." *Id*. at 324 n.16.  Additionally, "a federal habeas court

faced with a record of historical facts that supports conflicting inferences must presume—even if

it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in

7

favor of the prosecution, and must defer to that resolution." *Id*. at 326.  It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Id*.

Turning to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).  Here, the Delaware Supreme Court cited and applied *Jackson* in holding that there was sufficient evidence to support Petitioner's conviction for PFDCF.  *See Carter*, 2014 WL 7010032, at *2 n.7. Therefore, the Delaware Supreme Court's decision was not contrary to clearly established federal law.  *See Williams,* 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Jackson* standard to the facts of Petitioner's case. Petitioner's main complaint about the evidence surrounding his PFDCF conviction is that the State did not provide "any direct physical evidence" of a weapon.  (D.I. 16-2 at 17)  The Delaware Supreme Court rejected Petitioner's argument, because Petitioner's "own statement to police confirmed that he possessed and shot a gun," and "neighbors testified to hearing gun shots."  *Carter*, 2014 WL 7010032, at *3.

The following background information provides context for Petitioner's instant argument. At the close of the Petitioner's case, defense counsel moved for judgment of acquittal on the

aggravated menacing and PFDCF charges because the complaining victim – Capers – did not

testify at trial.  (D.I. 16-3 at 31)  In response, and after noting that the PFDCF charge would not

survive if the aggravated menacing charge did not survive, the State argued that there was

sufficient evidence to show a *prima facie* case of aggravated menacing.  (D.I. 16-3 at 31-32)  The

Superior Court denied Petitioner's motion for judgment of acquittal, stating: "I think there is

sufficient evidence to go to the jury on these charges, so I am going to leave it in the jury's

hands.  So, that motion is denied."  (D.I. 16-3 at 32)

To convict Petitioner of PFDCF, the State had to prove beyond a reasonable doubt that

Petitioner was in possession of a firearm during the commission of a felony.  *See* 11 Del. Code

§1447(a).  Under Delaware law, "a firearm need not be recovered to support a jury finding that a

defendant possessed a firearm during the commission of a felony." *Cruz-Urina v. State*, 125

A.3d 1100 (Table), 2015 WL 5824796, at *2 (Del. Oct. 2, 2015).  Rather, testimony alone can be

sufficient to establish that the defendant possessed a firearm during the commission of a felony.

*Id*. at *3.  Relatedly, the Third Circuit has repeatedly held that "the government may defeat a

sufficiency-of-the-evidence challenge on circumstantial evidence alone,"[1] and has also held that

a confession may be corroborated by circumstantial evidence.  *See United States v. Baker*, 293

F.2d 613, 616-17 (3d Cir. 1961).

At Petitioner's trial, the State played Petitioner's recorded police statement for the jury,

in which he stated, "I shot in the air.  My intention wasn't to harm nobody.  It was just to back

him [Capers' uncle] away."  (D.I. 16-7 at 36, 224)  During Petitioner's recorded statement the

police detective asked, "Kind of gun did you have on you that night?"  (D.I. 16-7 at 36)

---

[1] *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008).

Petitioner responded, "That night it was a 40. […] Matter of fact it was a 4-5 extended clip on it." (*Id.*)  Since the gun was never recovered, Petitioner's confession arguably provided the strongest evidence that Petitioner had a gun in his possession at the time of the incident.  The State, however, provided additional significant circumstantial evidence to support Petitioner's PFDCF conviction.  For instance, two neighbors testified that they heard gunshots during the incident.  The State played two recorded 911 calls from two people in the residence – Capers and a child – which described Petitioner as having a gun in his possession.  In Capers' recorded 911 call, Capers stated that she and Petitioner had initially been arguing in the house, that he was now outside of the house pointing a gun at her through a window, and that he had just fired the gun outside.  (D.I. 16-7 at 44-54)  In the child's recorded 911 call, the child stated that Petitioner had a gun with a red dot laser on it, and that he shot the gun once in the front yard.  (D.I. 16-7 at 56, 58)  Additionally, Officer Tate testified that, when he responded to the scene of the incident, Capers described how she and Petitioner were arguing, that Petitioner left the residence and returned with a gun, and then he fired a round up in the air in front of the house.  (D.I. 16-7 at 76, 220-221)

Viewing this evidence in a light most favorable to the State, the Court concludes that a rational jury could have found beyond a reasonable doubt that Petitioner was in possession of a gun at the time of the offense.  Therefore, Petitioner has not shown that the Delaware Supreme Court unreasonably applied *Jackson* in finding the evidence sufficient to sustain his conviction for PFDCF, nor has he shown that the Delaware Supreme Court's factual findings were objectively unreasonable.

### B. Claim Three: *Brady v. Maryland*

In Claim Three, Petitioner argues that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose letters, written by Capers and submitted to the Superior Court, in which Capers recants her prior excited utterances captured on the 911 call. (D.I. 7-1 at 26-33; D.I. 16-7 at 59-64) Since the Delaware Supreme Court denied Petitioner's *Brady* argument as meritless, Claim Three will not warrant relief unless the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, *Brady v. Maryland*.

A violation of *Brady* occurs when the government fails to disclose evidence materially favorable to the accused, including both impeachment evidence and exculpatory evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). In order to prevail on a *Brady* claim, a petitioner must establish that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value; (2) the prosecution suppressed the evidence, "either willfully or inadvertently"; and (3) the evidence was material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004). A petitioner demonstrates materiality of the suppressed evidence by showing a "reasonable probability of a different result." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). In turn, "a reasonable probability of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id*.

The Delaware Supreme Court's denial of Claim Three was not contrary to *Brady v. Maryland*, because the state court properly cited and detailed the *Brady* standard. The Delaware Supreme Court's denial of Claim Three also did not involve an unreasonable application of *Brady*. The record reveals that Capers sent her letters of recantation to the Superior Court

11

judges, and the letters were docketed in Petitioner's case and made part of the public record. (D.I. 16-7 at 8, Entry Nos. 10 & 39; D.I. 16-7 at 59-64)  The letters were not suppressed.  Thus, Petitioner's *Brady* argument necessarily fails.  Therefore, Claim Three does not warrant relief.

### C.  Claim Four:  Sixth Amendment Confrontation Clause Violation

Next, Petitioner asserts that he was denied the opportunity to confront and cross examine witnesses against him in violation of his Sixth Amendment rights because the State admitted Capers' recorded 911 call as evidence without having her testify.  The Delaware Supreme Court denied Petitioner's Confrontation Clause argument as meritless.  Therefore, the Court must determine if the Delaware Supreme Court's decision was either contrary, or an unreasonable application of, clearly established federal law.

The Confrontation Clause of the Sixth Amendment provides, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the ... right to be confronted with the witnesses against him." U.S. Const. amend. VI.  In *Crawford v. Washington*, 541 US 36 (2004), and its progeny, the United States Supreme Court held that the Confrontation Clause bars the admission of testimonial statements of witnesses absent from trial that are admitted to establish the truth of the matter asserted in the statement, unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination.  *See Crawford*, 541 US. at 59, 60 n. 9 (2004*); see also Davis v. Washington*, 547 U.S. 813, 823-24 (2006).  A testimonial statement is a statement that is made during non-emergency circumstances and which the declarant would objectively foresee might be used in the investigation or prosecution of a crime.  *See United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005); *Davis*, 547 U.S. at 822.  The threshold question in every Confrontation Clause case is whether the challenged statement is testimonial and, if so, whether

it was introduced to establish the truth of the matter asserted. *See Hinton*, 423 F.3d at 357; *Miller v. Metzger*, 2017 WL 3727316, at *4 (D. Del. Aug. 29, 2017). If the statement is not testimonial in nature, then the Confrontation Clause has no application. *See Whorton v. Bockting*, 549 U.S. 406, 420 (2007). Relevant to the instant issue, "at least the initial interrogation conducted in connection with a 911 call" is not a testimonial statement, because it "is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." *Davis*, 547 U.S. at 827.

In denying Claim Four, the Delaware Supreme Court cited and applied *Davi*s along with a Delaware case applying the *Crawford* standard. Therefore, the Delaware Supreme Court's decision is not contrary to clearly established federal law. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir.2008) (Supreme Court of Pennsylvania's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent) ); *Williams*, 529 U.S. at 406.

The Court also concludes that the Delaware Supreme Court's decision involved a reasonable application of *Davis*, *Crawford* and its progeny. As demonstrated by the following summary, the Superior Court exercised great caution to admit only those portions of Capers' 911 call that qualified as "excited utterances" that were also not "testimonial" under the Sixth Amendment.

> The 911 custodian testified that two 911 calls were made regarding the incident. The first call was made by Capers; the second, by a child inside the house. The Court granted the State permission to begin playing Capers' 911 call to the jury based on the State's proffer. After hearing a portion of the 911 call, the Court stopped the recording for a brief recess, and the jury left the courtroom.

13

During the recess, the Court held a discussion with the State and Defendant's trial counsel regarding the admissibility of the 911 call. The Court found that the portion of Capers' 911 call that was played for the jury qualified as an excited utterance under Delaware Rule of Evidence ("D.R.E.") 803(2) and, in accordance with *Dixon v. State*, was non-testimonial such that its admission did not violate the Confrontation Clause of the Sixth Amendment to the United States Constitution. The remainder of Capers' 911 call was not played for the jury.

Before the jury returned to the courtroom, the Court listened to the 911 call made by a child inside the residence and found the call admissible. The jury returned to the courtroom, and the child's call was played to the jury.

*Carter*, 2017 WL 237621, at *1–2.

When affirming Petitioner's conviction, the Delaware Supreme court explained:

In *Dixon v. State*, this Court upheld the admission of a recorded phone call between a 911 operator and a witness to a shooting. We concluded in that case that the taped phone call fell within the "excited utterance" exception to the hearsay rule under Delaware Rule of Evidence 803(2) and that its admission did not violate the Confrontation Clause of the Sixth Amendment because it was "non-testimonial." We find the same true in [Petitioner's] case. During the first taped phone call, [Petitioner] was still in the residence. During the second taped phone call, made two minutes after the first, [Petitioner] was outside the residence firing a gun. Both phone calls (i) were precipitated by an exciting event, (ii) were made while the excitement of the event was continuing, and (iii) related to the exciting event. As the Superior Court found, both phone calls qualified as excited utterances under DRE 803(2).

Moreover, the admission of the 911 phone calls and Capers' statements to the police did not violate the Sixth Amendment because the statements were non-testimonial. The statements were admissible because they "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation [was] to enable police assistance to meet an ongoing emergency." Accordingly, there was no violation of [Petitioner's] Sixth Amendments rights, and the Superior Court did not abuse its discretion in admitting this evidence at trial.

14

*Carter*, 2014 WL 7010032, at *2.

The trial transcript demonstrates that the Superior Court properly applied *Davis* by determining at which point Capers' recorded 911 call became testimonial and then declining to admit the testimonial portion into evidence.  For instance, after *sua sponte* stopping the tapes and discussing the tapes with counsel outside the presence of the jury, the Superior Court stated: "Let me go back to the initial objection by [Petitioner] to make sure the record is clear.  With regard to the call we just heard, I do believe it qualifies under 803(2) as an excited utterance based on my review of the case law.  […]  So, I also find that up until this point the declarant's statements have been non-testimonial in nature."  (D.I. 18-2 at 27)  The Superior Court also decided to stop the admission of the recorded call at that point, explaining: "I guess my concern is it's more of a questioning now.  It's not just the caller giving information and spouting off." (*Id.*)

In turn, the transcript of the portion of Capers' recorded 911 call that was admitted demonstrates that the main purpose of the call was to provide police officers with basic information to address a present emergency.  (D.I. 16-7 at 44-54)  Capers described a violent domestic event that had just occurred, and she was actively trying to assist the police in locating and arresting Petitioner.  Petitioner's location was unknown, and he had just discharged a firearm.  Given these circumstances, the Court concludes that the Delaware Supreme Court's holding regarding the non-testimonial nature of Capers' 911 call constituted a reasonable application of *Crawford* and *Davis*.  Since the portion of Capers' recorded 911 call that was admitted was non-testimonial, the admission of that portion of the 911 call without Capers'

accompanying testimony did not violate Petitioner's Sixth Amendment right to confrontation. Accordingly, the Court will deny Claim Four for failing to satisfy § 2254(d).

### D.  Claim Five: Coerced Confession

Next, Petitioner contends that his videotaped confession should not have been admitted at trial because his will was overborne by the police investigator and, at the time of the interrogation, he was intoxicated, tired, and hungry.  The Delaware Supreme Court only reviewed Claim Five for plain error, which would normally result in the Court analyzing the claim in context of a procedural default.[2]  The State, however, has not pressed that issue, instead arguing that Claim Five fails to satisfy § 2254(d).  Given these circumstances, Claim Five will only warrant relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The voluntariness of a defendant's confession is determined by examining the totality of the circumstances, including any police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental health.  *See Dickerson v. United States*, 530 U.S. 428, 434 (2000); *Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002).  The crucial factor, however, is whether there was coercive police activity which overcame the defendant's will or impaired his self-determination.  *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986).  Although there is no precise definition of "coercive police activity," the Supreme Court has identified the following examples as constituting such: interrogating the

---

[2]**Error! Main Document Only.**By applying the procedural bar of Rule 8, the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984) that its decision rested on state law grounds.  In turn, Delaware Supreme Court Rule 8 is an independent and adequate state procedural rule precluding federal habeas review of a claim's merits absent a showing of cause and prejudice, or a miscarriage of justice.  *See Campbell v. Burris,* 515 F.3d 172, 182 (3d Cir. 2008).

defendant for four hours while incapacitated and sedated in intensive care unit; interrogating a medicated defendant for over eighteen hours without food or sleep; holding a gun to the head of a wounded defendant to extract a confession; interrogating a defendant for sixteen days in a closed cell without windows, limited food, and coercive tactics; and holding a defendant for four days with inadequate food and medical attention. *See id*. at 164 n. 1. The Supreme Court has also noted that "coercion can be mental as well as physical.... Subtle pressures may be as telling as coarse and vulgar ones. The question is whether the accused was deprived of his free choice to admit, to deny, or to refuse to answer." *Garrity v. State of N.J.*, 385 U.S. 493, 496 (1967); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (stating test for determining voluntariness of confession is whether, in light of all surrounding circumstances, defendant's will was overborne).

The Delaware Supreme Court provided the following explanation when denying Claim Five:

> [Petitioner's] third argument is that his videotaped statement was inadmissible because he was intoxicated and did not talk to police voluntarily. [Petitioner] did not object to the admission of his statement below; therefore, we review for plain error. Plain error exists when the error complained of is apparent on the face of the record and is so prejudicial to a defendant's substantial rights as to jeopardize the integrity and fairness of the trial. The burden of persuasion is on the defendant to show prejudice. In this case, [Petitioner's] statement to police was admissible whether or not he testified at trial. Moreover, [Petitioner] has offered nothing besides his bare assertion to substantiate his contention that he was intoxicated at the time he made his statement. There is nothing in the videotaped statement, which reflects that [Petitioner] was calm, rational, and articulate when he spoke to police, to support this belated contention.

*Carter*, 2014 WL 7010032, at *3.

17

Turning to the inquiry under § 2254(d) in this case, the Court notes that the Delaware Supreme Court did not cite clearly established federal law when considering the voluntariness of Petitioner's videotaped police statement.  However, the Delaware Supreme Court's decision is not contrary to, or an unreasonable application of, clearly established federal law, because its denial of Claim Five is not " a conclusion opposite to that reached by [the Supreme] Court on a question of law" or decided differently than the Supreme Court "has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.  To begin, Petitioner does not deny that he was given a *Miranda* warning at the start of his interrogation, or that he agreed to speak with the police after he was so informed.  Petitioner also does not provide any support for his contention that he was intoxicated and hungry during his interrogation, or that his will was overborne.  The transcript of the interrogation reveals that the majority of the police officer's statements consisted mostly of the phrases "okay" and "uh-huh" said in response at various times to Petitioner's clear and articulate description of events.  (D.I. 16-7 at 30- 43)  While the Court cannot know Petitioner's level of sobriety or hunger from the transcript, the written transcript of the interaction between the investigator and Petitioner does not suggest that the police officer overcame Petitioner's will.  Thus, the Court concludes that the Delaware Supreme Court reasonably considered the totality of the circumstances in rejecting Petitioner's contention that his videotaped confession was involuntary.  Accordingly, the Delaware Supreme Court's denial of Claim Five does not warrant relief under § 2254(d).

### E.   Claim Six:  Officer Tate's False Testimony About Physical Altercation

In Claim Six, Petitioner contends that Officer Tate provided false testimony by stating that, when he went to crime scene, "Ms. Capers offered him information alleging that she was

18

physically assaulted by Petitioner and that she was pregnant.  This portion of Officer Tate's trial

testimony is a fabrication (perjury), and creates a fruit of the poisonous tree, nowhere in

[Petitioner's] criminal indictment is he being criminally charged with physically assaulting

(beating) a pregnant woman; Officer Tate should not have been allowed to testify to the

aforesaid physical assault."  (D.I. 7-1 at 18)  The record reveals that Petitioner did not present

this argument to the Delaware Supreme Court on direct or post-conviction appeal.  At this

juncture, any attempt by Petitioner to present this argument in a new Rule 61 motion would be

time-barred under Rule 61(i)(1).  *See DeAngelo v. Johnson*, 2014 WL 4079357, at *12 (D. Del.

Aug. 15, 2014).  Although Rule 61(i)(1) provides for an exception to the one-year time limitation

if the untimely Rule 61 motion "asserts a retroactively applicable right that is newly recognized

after the judgment of conviction is final," no such right is implicated in the instant argument.

Similarly, the exceptions to Rule 61(i)(1)'s time-bar contained in Rule 61(i)(5) and (d)(2) do not

apply to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or

that a new rule of constitutional law applies to the instant arguments.  Given these circumstances,

the Court must treat Claim Six as exhausted but procedurally defaulted, meaning that the Court

cannot review the merits of the Claim absent a showing of cause and prejudice, or of a

miscarriage of justice.

Petitioner does not assert any cause for his default of the instant Claim, and none appears

to the Court.  In the absent of cause, the Court will not address the issue of prejudice.  In

addition, Petitioner's failure to provide new reliable evidence of his actual innocence precludes

the application of the miscarriage of justice exception to his procedural default.  Thus, the Court

will deny Claim Six for being procedurally barred from habeas review.

19

### F.  Claim Seven:  Ineffective Assistance of Defense and Appellate Counsel

Claim Seven presents six instances of defense and appellate counsel's ineffective assistance.  The Superior Court considered and rejected all six arguments in Petitioner's Rule 61 proceeding.  Petitioner only presented three of those ineffective assistance of counsel claims on post-conviction appeal, and the Delaware Supreme Court affirmed the Superior Court's denial og those claims.  The State notes that Petitioner procedurally defaulted Claims Seven (a), (b), and (c) (D.I. 15 at 17-18), but does not rely on the procedural default for Claim Seven (a).  Given these circumstances, the Court will review Claims Seven (b) and (c) under the procedural default doctrine, and will review Claims Seven (a), (d), (e), and (f) under the deferential standard articulated in § 2254(d).

### 1.  Claims Seven (b) and (c) are procedurally defaulted

In Claim Seven (b), Petitioner asserts that defense counsel provided ineffective assistance by failing to challenge the affidavit of probable cause.  Although he does not provide a copy of the probable cause affidavit to demonstrate what should have been challenged, Petitioner alleges that "a strong possibility exists" that "Officer Tate 'tainted' [] the facts of the case by calling it a 'physical altercation' because it adds so many dimensions to a verbal dispute."  (D.I. 7-1 at 28)

In Claim Seven (c), Petitioner contends that defense counsel should have objected to Officer Tate's testimony concerning Capers' description of the argument leading to Petitioner's arrest and conviction.  According to Petitioner, Officer Tate falsely represented Capers' description of the incident by testifying that there had been a "physical altercation" between Petitioner and Capers just prior to Petitioner's firing of the gun.  (D.I. 7-1 at 22, 35)

Petitioner did not present these arguments to the Delaware state courts in his Rule 61 proceeding.  Claims Seven (b) and (c) are  now procedurally defaulted because any attempt to present the arguments in a new Rule 61 motion would be time-barred under Rule 61(i)(1), and none of Rule 61's exceptions to the time-bar apply.  Petitioner does not demonstrate cause for his default, thereby obviating the need to address prejudice for either Claim.  Nevertheless, the Court also notes that Petitioner cannot demonstrate actual prejudice with respect to defense counsel's failure to object to the probable cause affidavit (Claim Seven (b)).  The United States Supreme Court "has repeatedly declined to require the use of adversarial procedures to make probable cause determinations."  *Kaley v. United States*, 571 U.S. 320, 338 (2014).  Rather, trial provides a defendant the opportunity to contest evidence against him, "when the question becomes whether a defendant is guilty beyond peradventure."  *Id.*

> [A]n adversarial process is far less useful to the threshold finding of probable cause, which determines only whether adequate grounds exist to proceed to trial and reach that question. The probable cause decision, by its nature, is hard to undermine, and still harder to reverse. So the likelihood that a judge holding an evidentiary hearing will repudiate the grand jury's decision strikes us, once more, as "too slight" to support a constitutional requirement.

*Id.* at 339.  Here, Petitioner was arrested, indicted, and elected to proceed to trial.  He received a constitutionally sound trial, resulting in his conviction.  Consequently, Petitioner will not be prejudiced by the default of Claim Seven (b), because he cannot demonstrate a reasonable probability that the result of his proceeding would have been different but for defense counsel's failure to challenge the affidavit of probable cause.

Finally, Petitioner's failure to provide new reliable evidence of his actual innocence precludes his default of both Claims from being excused under the miscarriage of justice

21

exception.  For all these reasons, the Court will deny Claims Seven (b) and (c) as procedurally barred from habeas review.

### 2.  Claims Seven (a), (d), (e), (f):  Reviewed under § 2254(d)

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510, 522 (2003).  Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance.  *See Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome."  *Id.*

Finally, in order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987).  Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that the representation was professionally reasonable.  *See Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court correctly identified the *Strickland* standard applicable to Petitioner's ineffective assistance of counsel allegations.  Consequently, the Delaware Supreme Court's decision was not

contrary to clearly established federal law. *See Williams*, 529 U.S. at 406. For the following reasons, the Court also concludes that the Delaware state courts reasonably applied *Strickland* in denying all six allegations.

### a. Claim Seven (a): Failure to object to the admission of Petitioner's confession

In Claim Seven (a), Petitioner contends that defense counsel was ineffective for failing to object to the admission of his "illegal confession." The Court has already concluded that the Delaware Supreme Court reasonably held that Petitioner's confession was voluntary. It is well-settled that an attorney does not provide ineffective assistance by failing to assert a meritless objection or argument. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Therefore, the Court will deny Claim Seven (a) as meritless.

### b. Claim Seven (d): Failure to object to child's 911 call

In Claim Seven (d), Petitioner contends that defense counsel was ineffective for failing to object to the admission of the unidentified child's 911 call to the police. Petitioner presented this argument to the Delaware state courts as a violation of the Delaware Rules of Evidence. He presents it here as a violation of the Confrontation Clause. Both challenges are unavailing.

On direct appeal, the Delaware Supreme Court addressed the Confrontation Clause aspects of both 911 calls admitted at trial. The Delaware Supreme Court specifically found that Capers' statements in her 911 call were non-testimonial "excited utterances" and, thus, not subject to the confrontation provisions of the Sixth Amendment. *Carter*, 2014 WL 7010032, at *2. Although the Delaware Supreme Court held that the child's 911 call qualified as an excited utterance under D.R.E. 803(2), it did not address any confrontation clause issues related to the child's 911 call. *See id.*

23

In his Rule 61 proceeding, Petitioner argued that defense counsel should have objected to the child's 911 call as inadmissible under D.R.E. 403 for being unfairly prejudicial and cumulative, "because the child was audibly upset and because the information provided by the child was largely duplicative of Capers' 911 call." *Carter*, 2017 WL 237621, at *5. The Superior Court rejected Petitioner's evidentiary challenge, finding the call was not cumulative. *Id*. Petitioner did not present Claim Seven (d) on post-conviction appeal, causing the claim to be procedurally defaulted. However, given that the State has not asserted a procedural default, the Court will consider whether the Superior Court reasonably applied *Strickland* in denying the instant argument.

When rendering its decision to admit the 911 calls during Petitioner's trial, the Superior Court did not explicitly address its reason for permitting the child's entire recorded 911 call to be admitted. However, a review of the trial transcript indicates that the Superior Court viewed the child's 911 call as an admissible excited utterance, just as it had decided with respect to the portion of Capers' 911 call that it deemed admissible. (D.I. 18-2 at 27) After hearing the child's 911 call, the Superior Court stated, "It is clearly an excited utterance. This caller is terrified and sobbing." (*Id*.) As with the admitted portion of Capers' call, the child's emotional 911 call was made close in time to the shooting, it provided the police officers with basic information to address an emergency, and it was asking for help against a real physical threat. The child's 911 call was non-testimonial for the same reason the admitted portion of Capers' 911 call was non-testimonial. Accordingly, the Court concludes that defense counsel did not perform ineffectively by not raising a meritless objection to the introduction of the child's 911 call.

24

### c. Claim Seven (e): Stipulating to Petitioner's prohibited status

In Claim Seven (e) (originally identified as Claim One in the Petition), Petitioner contends that defense counsel provided ineffective assistance by not moving to sever his person prohibited charge, which he asserts resulted in the State unduly and prejudicially focusing on that charge. In Petitioner's Rule 61 proceeding, the Delaware Superior Court denied Claim Seven (e) after concluding that Petitioner failed to demonstrate that he was prejudiced by the joinder of the PFBPP charge. *Id.* at *4. The Superior Court explained that, "rather than the State introducing potentially prejudicial evidence of [Petitioner's] prior conviction, the parties stipulated that [Petitioner] was a person prohibited from possessing a firearm. The stipulation stated only that [Petitioner] is prohibited from possessing a firearm; it did not indicate why." *Carter*, 2017 WL 237621, at *2; *see* (D.I. 16-7 at 95) The Superior Court also noted, "Consistent with [the] limiting instruction, the State never emphasized [Petitioner's] status as a person prohibited to the jury." *Carter*, 2017 WL 237621, at *4.

The Delaware Supreme Court also assessed Claim Seven (e) and, applying the *Strickland* standard, found:

> [Petitioner] cannot establish that the failure to sever the charge would have changed the outcome of the case. The jury was never told why [Petitioner] was a person prohibited and were given specific limiting instructions that the stipulation was "irrelevant to [their] deliberations in this case," and they were "not to speculate as to the reason why defendant is prohibited, nor consider that fact as evidence of guilt as to the other crimes alleged in the indictment." In addition, the State never emphasized the stipulation nor encouraged speculation by the jury. Therefore, [Petitioner] was not prejudiced by his counsel's failure to sever the charge.

*Carter*, 2017 WL 5499162, at *3.

25

The Delaware state courts reasonably applied *Strickland* in denying the instant argument. To begin, defense counsel's decision to enter the stipulation did not fall below an objective standard of reasonableness.  In his Rule 61 affidavit, defense counsel explains that he did not think a motion for severance would be successful due to the nature of the charges and because the same evidence would be provided for both possession charges.  (D.I. 16-7 at 260)  Defense counsel also conferred with Petitioner about this issue before entering the stipulation.

In addition, Petitioner cannot demonstrate that he was prejudiced by the stipulation. Importantly, by stipulating to the fact of Petitioner being a person prohibited, defense counsel insulated Petitioner from exposing the jury to the reason he was prohibited from owning or possessing a firearm.  This strategy prevented the jury from potentially giving improper weight to Petitioner's prior offenses as a way of determining guilt in the trial before them.  Accordingly, the Court will deny Claim Seven (e) for failing to satisfy § 2254(d).

### d.  Claim Seven (f): Failure to call Capers as a witness

In his final Claim, Petitioner contends that defense counsel provided ineffective assistance for failing to "call or subpoena [Capers,] the only alleged eyewitness" after she sent the letters of recantation.  He alleges that Capers would have testified that she never felt threatened by him.

The Delaware Supreme Court denied Claim Seven (f) after determining that Petitioner failed to overcome the strong presumption that defense counsel's conduct was reasonable.  One main factor leading the Delaware Supreme Court to this conclusion was that Petitioner did not ask defense counsel to pursue Capers as a witness but, in fact, actually told defense counsel that he "hoped and believed" she would not show up in court.  *Carter*, 2017 WL at 5499162, at *3.

26

The Delaware Supreme Court also noted that defense counsel's decision was reasonable because it avoided the "State's impeachment of Ms. Capers by cross-examining her about her relationship with [Petitioner] and her prior statements to the police that contradicted her affidavit." *Id.*

In *Strickland*, the Supreme Court noted that, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to purse those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691. As explained in his Rule 61 affidavit, defense counsel's decision to not call Capers as a witness was, in large part, due to Petitioner's indication to defense counsel that Capers would likely not appear at trial. (D.I 16-7 at 261) The Rule 61 affidavit also states that defense counsel informed Petitioner about the State's options for securing Capers' presence at trial but, "at no time did Petitioner ever request that Morlicea Capers be subpoenaed for trial as a defense witness." (D.I 16-7 at 262) Additionally, the State had already informed defense counsel of its intent to impeach Capers if she testified inconsistently with her prior statements and, since her letters did not deny that Petitioner had a gun, Capers' testimony could have caused more damage to Petitioner's case. *See Carter*, 2017 WL 237621, at *7.

Significantly, in this proceeding, Petitioner does not contradict defense counsel's statement that Petitioner had expressed the hope that Capers would not show up at trial or that Petitioner had never expressed a desire to call Capers as a witness. Based on the foregoing, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* in holding that defense counsel's failure to call Capers as a witness did not constitute ineffective assistance. Accordingly, the Court will deny Claim Seven(f).

## IV.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing.  An appropriate Order will be entered.